## GRAF *v.* SMITH.

*(Supreme Court, General Term, First Department.* December 31, 1891.)

ACCOMMODATION PAPER—DIVERSION FROM ORIGINAL PURPOSE.

> Defendant gave his promissory note to persons who had contracted with him to do certain work, upon statements by them that they needed help to enable them to pay for labor and material necessary in their work, and upon their promise to complete the work before the note came due, or, if not, to pay it. *Held*, that as no specific restriction was imposed as to the manner in which they should use the note, an indorsement and transfer of it in payment of an antecedent loan, represented by their unpaid check, was not a fraudulent diversion.

Appeal from circuit court, New York county.

Action upon a promissory note by Frank H. Graf, as indorsee, against Joel B. Smith, as maker thereof. On a trial by jury, a verdict was rendered for defendant, and a motion by plaintiff for a new trial was denied. From the judgment for defendant entered on the verdict, and from the order denying his motion for a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT and ANDREWS, JJ.

*Smith & White*, (*A. C. Smith*, of counsel,) for appellant. *Thomas O'Callaghan, Jr.*, for respondent.

BARRETT, J. This case was tried and sent to the jury upon an erroneous view of the legal effect of the facts proved. The action was against the defendant as the maker of a promissory note payable to the order of T. Aspinwall & Son. The latter firm indorsed the note, and transferred it before maturity to the plaintiff. This transfer was to pay a loan previously made by

the plaintiff to Aspinwall & Son, for which he held their unpaid check. At the time when the transfer was made the unpaid check was surrendered to Aspinwall & Son. The defense was that the note was given by the defendant to the Aspinwalls for a specific purpose, and that it was fraudulently diverted by them from that purpose. If this defense had been established, there would be no doubt as to the correctness of the verdict, for the reason that the surrender of the valueless check of Aspinwall & Son did not constitute the plaintiff a *bona fide* holder of the note in suit so as to shut out the defense of fraudulent diversion. The case of *Insurance Co.* v. *Church*, 81 N. Y. 218, is directly in point, so far as this question is concerned, and the distinction between the surrender of a debtor's own note and the surrender of his worthless check is there pointed out. Pages 226, 227.

The difficulty in the present case, however, is that a fraudulent diversion of the note was not established, and the error consisted in the supposition that what was proved by the defendant amounted to such a diversion. All that was proved was this: Some weeks before the note in suit was given, Aspinwall & Son had made a contract with the defendant to do the tiling work on some buildings. The work had not yet commenced when a representative of the Aspinwalls, one Robinson, called at the defendant's office, and asked the defendant's son, Frank E. Smith, if the defendant could not help them out in some way; that they were very short of money, and did not know how they were going "to pull through." The son replied that he could not help them out any way. Thereupon Robinson said: "We are going to do this work. Here are those vestibules; the work will be done, and if the work is not done we will pay the note. The work will be all done before the note is due." Upon that understanding, Mr. Frank E. Smith directed his father "to make out a note for $500 at three months." This son further testified as follows: "He [Robinson] said they were short of money for pay-rolls, and they could not get along with their work at all, and it would be a great accommodation, and he said he could get my note discounted, and it would give him money for his pay-rolls and to do the work,—the tiling work of the buildings." And again: "He said they had to buy mouldings, and that their account on that was so large that they could not get any more credit on it, and they would have to have more money to buy mouldings and for their pay-rolls," etc. Upon cross-examination, the same witness testified as follows: "Mr. Robinson said that he wanted this note for the marble man; that their account with him was so large they could not get any more credit for marble, and they said they could not raise money to meet their pay-rolls, and wanted me to help them. He said Mr. Aspinwall sent him up to see if I could not help him out." Robinson was also examined upon behalf of the defendant, and he testified that he asked Mr. Smith if he would give them some money, as they were "rather short;" to which Smith replied that "he could not." Robinson then said, "Can you not give us a note?" And Smith replied, "I will give you a note if you will promise to attend to the work at once;" and Robinson took the note from him "on that understanding." The testimony given by the plaintiff need not be referred to, as the question of law necessarily depends upon the effect of the evidence, which the jury by their verdict seem to have credited.

We think that, upon this testimony, which is all that was adduced by the defendant in support of his defense, no restriction was imposed upon Aspinwall & Son as to the manner in which they should use the note, and that the defense of a fraudulent diversion was not made out. It was simply a general accommodation. What Robinson pleaded for was "help." If the Aspinwalls had help, they could fulfill their tiling contract. They wanted money for their pay-rolls, money to buy mouldings with, money for their marble man. But the note was not specifically restricted by the defendant to all or to any one of these purposes. These were simply specifications of the Aspin-

walls' needs, and formed the basis of the appeal for help generally. The defendant's inducement was to sustain the Aspinwalls until they could perform their tiling contract, and the note was undoubtedly given to enable them to perform that contract. In other words, it was given to enable them to raise money to be used in their business, they promising, when thus in funds, faithfully to perform their existing contract with the defendant. A fraudulent misappropriation cannot be predicated of such facts. Such a misappropriation occurs where there is a diversion from the original object and design, as where the note is designed to be discounted for the purpose of taking up other paper of the person giving the accommodation, or was otherwise intended for his benefit. Daniel, Neg. Inst., (3d Ed.) § 794. The benefit here referred to is a direct benefit to the accommodation maker; not a benefit solely to the payee, even though such benefit may enable the payee to do something for the accommodation maker which he has agreed to do, but which, were it not for the accommodation, he might be unable to do. Mr. Daniel also says, (Id. § 793:) "If the note be made for general accommodation, without restriction as to its use, the party accommodated may use it in any way beneficial to himself, provided such use be legal, and it will not matter that he fails to apply the proceeds according to a prior agreement, for otherwise there could be no recovery on accommodation paper." And in support of this latter proposition he cites *Brooks* v. *Hey*, 23 Hun, 372.

In the case at bar the defendant had no interest in the specific application of the proceeds of the note. His only interest was in its use to benefit and sustain the Aspinwalls and enable them to keep up. Thus the note had all the elements of accommodation paper, and the defendant was liable thereon, although it was applied to the payment of a pre-existing debt. Indeed, he would have been equally liable if the note had merely been pledged to secure such a debt. Id. § 793, and cases there cited. Even if, upon a strained construction of the evidence, it could be held that the note was given in anticipation of the work to be done under the tiling contract, still that would not avail the defendant, for it would simply amount to a case of mutual promises, and the agreement of the Aspinwalls, though subsequently unfulfilled, would support the note and furnish an adequate consideration therefor. It follows that in no aspect of the case was a defense made out, and that the learned judge should have directed a verdict for the plaintiff. The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.